# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| CAMPMED CASUALTY & INDEMNITY COMPANY, INC. § § § § v. § § SPECIALISTS ON CALL, INC., § LEONARD DASILVA, M.D.; LINDA § BANK, TOMMIE BANK § | Civil Action No. 4:16-CV-00452 Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are Plaintiff Campmed Casualty & Indemnity Company, Inc.'s Rule 12(b)(6) Motion to Dismiss Defendant Specialists on Call, Inc.'s Original Counterclaim (Dkt. #25) and Plaintiff's Rule 12(b)(6) Motion to Dismiss Dr. Leonard DaSilva's Original Counterclaim (Dkt. #26). Being that the two motions are nearly identical, the Court will address the two motions together. After reviewing the relevant pleadings, the Court determines the motions should be granted in part and denied in part.

### BACKGROUND

This is an insurance coverage dispute arising out of a personal injury lawsuit styled: *Linda and Tommie Bank v. Leonard DaSilva, MD and Specialists on Call, Inc.*, No. 416-04343-2014 (416th District Ct., Collin County, Tex. Oct. 30, 2015) (the "Bank Lawsuit"). Plaintiffs in the underlying suit allege that Specialist on Call, Inc. ("SOC") and Dr. Leonard DaSilva ("Dr. DaSilva") misdiagnosed Linda Bank and failed to maintain an effective system for a correct diagnosis and treatment recommendation.

Campmed Casualty & Indemnity Company, Inc. ("Campmed") issued a claims-made insurance liability policy (the "Policy") to SOC for the policy period covering November 16,

2012 to November 15, 2013. The Policy provides that Campmed has the right and duty to defend and indemnify the insured in any suit seeking damages related to policy-covered injury. Under the Policy terms, a claim for damages against the insured must be first made during the policy period or an Extended Reporting Period. A claim is first made at the earlier of the following: (1) when notice of such claim is received by the insured and reported to Campmed in writing; or (2) when a claim is made directly to Campmed in writing. The Extended Reporting Period allows a claim received by the insured during the policy period and reported to Campmed within thirty days after the end of the policy period to be considered reported within the policy period. For the Extended Reporting Period, the insured must notify Campmed in writing of an intent to purchase the Extended Reporting Period within thirty days after the end of the policy period or the date the policy is terminated, whichever is earlier. It is undisputed that SOC did not purchase an Extended Reporting Period.

On November 15, 2013, Plaintiffs in the Bank Lawsuit made a demand on SOC for alleged injuries and damages sustained by Linda Bank. On December 2, 2013, SOC wrote to Campmed and attached a copy of the demand letter. Three days later, Campmed's claims adjuster, Marian McTague ("McTague"), advised SOC that Campmed would cover this case and had retained outside counsel to represent SOC in responding to the demand. On January 7, 2014, Mctague again confirmed that there was coverage for the demand.

In October 2015, the Bank Lawsuit was filed against SOC and Dr. DaSilva. SOC provided notice to Campmed of the Bank Lawsuit. On October 26, 2015, Campmed issued a letter to SOC acknowledging its retention of MacDonald Devin, P.C. as defense counsel to represent SOC in the Bank Lawsuit. In that letter, Campmed represented to SOC that there was coverage for the lawsuit up to the one-million-dollar limit. However, on June 21, 2016,

Campmed issued a letter denying coverage for the Bank Lawsuit. Campmed asserts SOC's claim for damages with respect to Bank's injury was not first made within the policy period because SOC did not purchase an Extended Reporting Period.

On June 29, 2016, Campmed filed its complaint seeking a declaratory judgment to establish that it does not have a duty to defend or indemnify SOC and Dr. DaSilva in the underlying lawsuit (Dkt. #1). On August 15, 2016, SOC filed an answer to Campmed's complaint (Dkt. #12), and Dr. DaSilva did the same on September 6, 2016 (Dkt. #19). On September 14, 2016, Campmed filed identical 12(b)(6) motions to dismiss against SOC and Dr. DaSilva (Dkt. #25; Dkt. #26). SOC filed a response on September 27, 2016 (Dkt. #29). Dr. DaSilva's response adopted and incorporated the entirety of SOC's response (Dkt. #30). On October 12, 2016, Campmed filed a reply to both SOC and Dr. DaSilva (Dkt. #31) and amended such reply the next day (Dkt. #32).[1] On October 17 and 18, 2016, SOC and Dr. DaSilva filed identical sur-replies (Dkt. #35; Dkt. #37).

## LEGAL STANDARD

The Federal Rules of Civil Procedure require that each claim in a complaint include a "short and plain statement . . . showing that the pleader is entitled to relief." Fed. R. Civ. P.

---

[1] Dr. DaSilva moves to strike Campmed's reply and amended reply as being untimely filed per Local Rule CV-7(f) (Dkt. #34). Pursuant to Federal Rule of Civil Procedure 12(f), a court may strike a pleading that contains "redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Deciding whether to strike all or a portion of a pleading lies within the Court's sound discretion. *In re Beef Indus. Antitrust Litig.*, 600 F.2d 1148, 1168 (5th Cir. 1979). Here, SOC and Dr. DaSilva's responses were filed on September 27, 2016. The Local Rules require Campmed's reply to be filed on October 7, ten days "from the date the response is served." Local Rule CV-6(a). Campmed filed its reply on October 12 and its amended reply on October 13. The Court therefore finds that Campmed's reply and amended reply were untimely, filed without the Court's prior permission, and thus subject to be striken at the Court's discretion. However, the Court finds no reason to exercise its discretion to strike these pleadings. Dr. DaSilva has not asserted that Campmed's pleadings involve "redundant, immaterial, impertinent, or scandalous matter[s]." Fed. R. Civ. P. 12(f). Instead, Dr. DaSilva argues only that the pleadings were untimely. The Court is not convinced by this argument, especially because the Court cannot discern any prejudice by allowing Campmed's pleadings to stand. Therefore, the Court **DENIES** Dr. DaSilva's motion to strike Campmed's reply and amended reply (Dkt. #34).

8(a)(2). Each claim must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A Rule 12(b)(6) motion allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts in plaintiff's complaint and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012). The Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The Court must then determine whether the complaint states a claim for relief that is plausible on its face. "'A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "But where the well-pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.* "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the

necessary claims or elements.'" *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) (citation omitted). This evaluation will "be a context-specific task that requires the reviewing [C]ourt to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

**ANALYSIS**

Campmed seeks to dismiss under Rule 12(b)(6) two of the five affirmative defenses asserted by SOC and Dr. DaSilva (collectively, "Defendants"). *See* Dkt. #12 a p. 4–5 (listing SOC's affirmative defenses in its answer); Dkt. #19 at p. 3 (listing Dr. DaSilva's affirmative defenses in his answer). Campmed also seeks to dismiss Defendants' pleas for recovery of their declaratory action fees and a jury determination of such fees.

A Rule 12(b)(6) motion is not proper to dismiss a defendant's affirmative defense. The proper procedure requires a motion to strike pursuant to Rule 12(f). Instead of requiring Campmed to replead, the Court will construe its Rule 12(b)(6) motions to dismiss as Rule 12(f) motions to strike an affirmative defense. *See Huffman v. Remstar Int'l, Inc.*, No. 4:08-cv-157, 2009 WL 1445967, at *1 (E.D. Tex. May 21, 2009) (construing a motion to dismiss an affirmative defense under Rule 12(b)(6) as a motion to strike under Rule 12(f)).

"Although motions to strike a defense are generally disfavored, a Rule 12(f) motion to dismiss a defense is proper when the defense is insufficient as a matter of law." *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1057–58 (5th Cir. 1982). The Court has discretion to strike an insufficient defense or "redundant, immaterial, impertinent, or scandalous matter" acting either sua sponte or upon a party's motion. Fed. R.

Civ. P. 12(f). When determining whether the affirmative defense asserted by defendant is sufficient as a matter of law, the Court may consider: (1) whether the defenses are applicable; and (2) whether the defenses are sufficiently pleaded as to give plaintiff fair notice. *See Kaiser Aluminum*, 677 F.2d at 1061 (striking an antitrust defense as insufficient as a matter of law because it did not apply to plaintiff's underlying action); *Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir. 1999) (requiring an affirmative defense to be pleaded "with enough specificity or factual particularity to give the plaintiff 'fair notice' of the defense that is being advanced"). Under *Woodfield*, the "fair notice" pleading requirement is met if a defendant "sufficiently articulated the defense so that the plaintiff was not a victim of unfair surprise." 193 F.3d at 362.

Campmed argues Defendants cannot allege waiver and estoppel to extend coverage where none existed. Further, Campmed states that Defendants have not pled the necessary elements for estoppel or waiver (Dkt. #25 at pp. 1–3; Dkt. #26 at pp. 1–3). Defendants respond that it is not trying to insure a risk not contemplated by the Policy terms. Instead, Defendants have alleged that Campmed should be estopped from justifying a denial of coverage due to Campmed's waiver of a notice provision requiring receipt of a claim within the policy period (Dkt. #29 at p. 2).

Waiver and estoppel are often used interchangeably, but the two should be recognized and applied as distinct legal doctrines. *Emp'rs Commercial Union Ins. Co. of Am. v. Great Am. Ins. Co.*, 200 S.E.2d 560, 563 (Va. 1973). Waiver "is the voluntary, intentional abandonment of a known legal right, advantage, or privilege." *Cowan v. Psychiatric Assocs.*, 387 S.E.2d 747, 749 (Va. 1990) (quoting *Fox v. Desse*, 362 S.E.2d 699, 707 (1987)). On the other hand, estoppel exists when the conduct of one party has induced the other party to take a position that would result in harm if the first party's acts were repudiated." *Dominick v. Vassar*, 367 S.E.2d 487, 489

(Va. 1988). Here, the doctrine of waiver is inapplicable. The elements of waiver include "knowledge of the facts basic to the exercise of the right and the intent to relinquish that right." *Emp'rs Commercial Union*, 200 S.E.2d at 563. To support their claim of waiver, Defendants focus on the representations in their answer made by Campmed and McTague, Campmed's claims adjuster (Dkt. #29 at p. 11). The Court finds no facts alleged that suggest Campmed voluntarily and intentionally abandoned its right to receive notice of a claim within the policy period. Thus, the Court strikes the affirmative defense of waiver from Defendants' answers.

Next, the Court considers Defendants' defense of estoppel. A party who relies upon estoppel must prove by "clear, precise and unequivocal evidence" "(1) a representation, (2) reliance, (3) a change in position, and (4) detriment." *Dominick*, 367 S.E.2d at 489. The general rule in Virginia is that coverage under an insurance policy cannot be extended by waiver or estoppel to include risks not covered by the policy's terms. *Blue Cross & Blue Shield v. Wingfield*, 391 S.E.2d 73, 74–75 (Va. 1990) (quoting *Sharp v. Richmond Life Ins. Co.*, 183 S.E.2d 132, 135 (Va. 1971)). The only exception to this rule is "where an insurer unconditionally defends an action brought against its insured." *Norman v. Ins. Co. of N. Am.*, 239 S.E.2d 902, 908 (Va. 1978). Based on the allegations in Defendants' answers, the Court finds that the exception applies. Campmed acknowledges in its October 26, 2015 letter that it would retain counsel to represent Defendants in the Bank Lawsuit. There were no conditions attached to the letter. Further, Defendants have adequately pleaded facts that support its estoppel defense and place Campmed on fair notice. Thus, the Court refuses to strike this affirmative defense.

The Court also strikes Defendants' demand for a jury determination of all costs and reasonable attorneys' fees incurred in this action pursuant to § 38.2-209(A) of the Code of

7

Virginia. The Supreme Court of Virginia maintains that a judge, not a jury, decides the award of attorney's fees and cost to the insured when an insurer breaches an insurance contract in bad faith. *REVI, LLC v. Chi. Title Ins. Co.*, 776 S.E.2d 808, 812 (Va. 2015). Accordingly, the Court strikes such demands from Defendants' answers.

## CONCLUSION

It is therefore **ORDERED** that Plaintiff Campmed Casualty & Indemnity Company, Inc.'s Rule 12(b)(6) Motion to Dismiss Defendant Specialists on Call, Inc.'s Original Counterclaim (Dkt. #25) is hereby **GRANTED IN PART AND DENIED IN PART**.

It is further **ORDERED** that Plaintiff's Rule 12(b)(6) Motion to Dismiss Dr. Leonard DaSilva's Original Counterclaim (Dkt. #26) is hereby **GRANTED IN PART AND DENIED IN PART**.

The Court strikes the waiver affirmative defense asserted in Defendant Specialists on Call, Inc. and Defendant Dr. Leonard DaSilva's answers (Dkt. #12: Dkt. #19). Also, the Court strikes the demand for a jury determination of all costs and attorneys' fees. The affirmative defense of estoppel asserted in both Defendants' answers is allowed to stand.

It is further **ORDERED** that Defendant Leonard DaSilva, M.D.'s Motion to Strike Campmed's Reply Brief and Amended Reply Brief (Dkt. #34) is hereby **DENIED**.

**SIGNED this 26th day of January, 2017.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE